George Hofmann (10005)
**Parsons Kinghorn Harris**
A Professional Corporation
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for David L. Miller,
Chapter 7 Trustee

---

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>PAUL STEVEN CHACON,<br><br>Debtor. | Bankruptcy No. 14-22197 (JTM)<br><br>Chapter 7 |

**TRUSTEE'S MOTION FOR ORDER APPROVING
SALE OF STOCK FREE AND CLEAR OF LIENS**

David L. Miller, in his capacity as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Paul Steven Chacon (the "Debtor"), by and through counsel, hereby moves the Court (the "Motion") for an order approving the sale of stock free and clear of liens (the "Motion"), on the terms and conditions set forth below.  The personal property to be sold is the estate's interest in 28,572 shares of common stock (the "Stock") in Aviacode, Inc. (the "Company").  The Trustee proposes to sell the stock to David Jensen ("Jensen") on the following terms and conditions:

{00208945.DOCX /}

1. Subject to this Court's approval, the Trustee has entered into an agreement for the sale of the Property pursuant to the terms of the agreement attached as Exhibit A. The terms of this agreement are summarized in this Motion; however, to the extent of any inconsistency between the summary in this Motion and the agreement itself, the terms of the agreement control. Creditors and parties in interest are encouraged to review the terms of the agreement.

2. The total purchase price is $28,572.00, or such greater price as may be generated through an auction (the "Auction") in the event the Trustee receives a higher and better offer for the purchase of the Stock. The purchase price is payable through a deposit of $1,000 to be held by counsel for the Trustee pending consummation of the transaction, with the balance due within twenty days after entry of an Order of this Court approving the sale.

3. The proposed sale of the Stock is subject to approval of this Court and subject to higher and better offers. If the Trustee receives a higher and better offer for the Stock on or before five days before the first scheduled hearing to approve this Motion, then the Trustee will conduct an Auction as determined by the Trustee. The first higher bid for the Stock must be at least $29,072. Each higher bid thereafter must be at least $500 greater than the previous bid. Any offer accepted must be for all of the Stock; the Stock will not be available in increments or separate parcels.

4. The Trustee has agreed to transfer the Stock to Jensen free and clear of all liens, claims, and interests pursuant to Bankruptcy Code § 363(f). The Trustee is not aware of any liens or claims against the Stock. The Trustee has made no

representations or warranties to Jensen except as set forth in Section 8 of the agreement.

5. Jensen is the Founder and Executive Chairman of the Company and is familiar with the Company's operations, financial condition, prospects, assets and liabilities. The negotiations between the Trustee and Jensen have been at arm's length and in good faith.

6. Based on the Trustee's investigation of the Stock, the Trustee believes that the purchase price for the Stock is fair and is in the best interest of creditors. In particular, the Stock is not publically traded. The Trustee obtained a list of all current shareholders of the Company and sent them a letter inviting offers. Although the Trustee did receive other proposals in response to his letter, the offer represented by the agreement is the highest and best offer received by the Trustee to date. Moreover, the agreement is subject to higher and better offers.

**WHEREFORE**, the Trustee respectfully requests this Court to enter an Order granting the approval of the proposed sale of the Stock on the terms described on Exhibit A pursuant to Bankruptcy Code § 363, free and clear of any liens, claims, and interests against the Stock.

**DATED** March 25, 2015

By: /s/ George Hofmann
 George Hofmann,
 Attorneys for Trustee

# EXHIBIT A

## OFFER TO PURCHASE AND PURCHASE AGREEMENT

THIS OFFER TO PURCHASE AND PURCHASE AGREEMENT (this "Agreement") is made as of March 20, 2015 by and between David Jensen, having an address at 515 East 100 South, Suite 700, Salt Lake City, UT 84102 ("Buyer"), and David L. Miller, Chapter 7 bankruptcy trustee (the "Trustee") in the case of In re Paul Chacon ("Paul Chacon"), United States Bankruptcy Court, District of Utah (the "Bankruptcy Court"), Case No. BK-14-22197 JTM, having an address at 117 West 200 South, Farmington, Utah 84025 ("Seller").

### *RECITALS*:

*Background*

A. On March 10, 2014, Paul Chacon filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code the ("Bankruptcy Code") with the Bankruptcy Court, Case No. 14-2219 (the "Bankruptcy Case").

B. The Bankruptcy Case was subsequently converted to one under Chapter 7 of the Bankruptcy Code, and the Trustee was appointed as the Chapter 7 trustee of the Debtor's Bankruptcy Estate (the "Estate").

C. One of the assets of the Paul Chacon Bankruptcy Estate is a block of 28,572 shares of the common stock (the "Shares") of Aviacode, Inc., a Delaware corporation ("Aviacode").

D. Buyer is the Founder and Executive Chairman of Aviacode. The Buyer is acting as an individual under this Agreement and not in his capacity as Founder and Executive Chairman.

*This Offer to Purchase*

E. The Shares are an asset of the Estate.

F. The Paul Chacon Trustee, has agreed to sell and assign any and all right, title and interest of any kind whatsoever that may be an asset of the Paul Chacon Bankruptcy Estate, whether known or unknown, whether legal or equitable, in the Shares to Buyer and to cause Stock Certificate No. 75 evidencing the Shares to be delivered to Buyer pursuant to the terms of this Agreement and subject to the approval of the Bankruptcy Court. For purposes of this Agreement, the legal and equitable rights to the Shares of the Seller, to Stock Certificate No. 75 are collectively referred to as "Seller's Rights to the Shares".

G. Subject to the terms and conditions herein, Buyer desires to purchase the Seller's Rights to the Shares on the terms set forth herein.

H. This Agreement has been negotiated in good faith and at arms-length and the Buyer is a good-faith purchaser and therefore subject to the protections of 11 U.S.C. § 363(m).

NOW, THEREFORE, in consideration of the mutual covenants contained herein, Sellers and Buyer agree as follows:

### *AGREEMENT*

1. <u>Agreement to Purchase and Sell</u>. Subject to the approval of the Bankruptcy Court, Buyer agrees to purchase from Seller, and the Seller agrees to sell to Buyer, on the terms and conditions stated in this Agreement, the Seller's Rights to the Shares.

2. <u>Purchase Price</u>. The total "Purchase Price" to be paid by the Buyer to the Seller for the Seller's Rights to the Shares shall be the higher of (i) $28,572.00 (the "<u>Initial Offer Price</u>"), or (ii) such greater price resulting from the auction ("<u>Auction</u>") provided for in Section 6 of this Agreement.

The Purchase Price shall be payable to the Seller at the Closing as defined below. Notwithstanding anything else contained herein to the contrary, if the Purchase Price is greater than the Initial Offer Price as a result of the Auction, and Buyer does not become the winning bidder by submitting an overbid that is accepted by Sellers, Buyer shall have no obligation to purchase the Seller's Rights to the Shares and the Deposit provided for in Section 4 below shall be returned to Buyer in full.

3. <u>Other Bidders</u>. The sale of the Sellers Rights to the Shares under this Agreement is subject to higher and better offers from third party offerors ("<u>Other Bidders</u>") financially able to pay the Purchase Price pursuant to the Auction (as defined in Section 6 below) and who comply with the terms and conditions applicable to Buyer under this Agreement.

4. <u>Deposit</u>. Upon Buyer's execution of this Agreement, Buyer shall deposit the sum of One Thousand Dollars ($1,000) (the "<u>Deposit</u>") with the law firm of Cohne Kinghorn, P.C., counsel to the Paul Chacon Trustee. The Deposit shall be held, in a separate account and shall not be commingled with any other funds of Seller or such law firm. The Deposit shall continue to be held by the law firm of Cohne Kinghorn, P.C. pursuant to the terms and conditions of this Agreement. At Closing, assuming Buyer is successful bidder at the Auction, the Deposit shall be applied against the Purchase Price. If Buyer fails or refuses to perform his obligations hereunder for any reason other than the default of Seller in performance of Seller's obligations hereunder or the purchase of the Seller's Rights to the Shares by an Other Bidder, then the Seller may retain the Deposit as liquidated damages.

Any and all Other Bidders shall also deposit $1,000 with the law firm of Cohne Kinghorn on the same terms and conditions as Buyer. Buyer shall be under no obligation to perform under this Agreement unless (a) the Seller has also performed as set forth herein, and (b) the Seller has received authorization from the Bankruptcy Court to so perform.

5. <u>Filings With Bankruptcy Court</u>. Promptly after the execution of this Agreement (and in no event later than the seventh business day following the execution of this Agreement) the Trustee shall file and serve a Motion (together with supporting papers and proper notice thereof) to interested persons as required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Rules</u>") seeking approval of this Agreement and the Auction

described in Section 6 below (the "Auction Order"), The Auction date shall be the date of the hearing on the Auction Order.

      6.    Bankruptcy Court Approval; Auction. Buyer acknowledges that this Agreement is subject to, and conditioned upon, the approval of the Bankruptcy Court for the Paul Chacon Bankruptcy Estate. If Seller receives a higher and better offer for the Seller's Rights to the Shares on or prior to five (5) days before the first scheduled hearing on the Seller's motion seeking approval of this Agreement, then the Seller shall, at the time of such first hearing, conduct an auction (the "Auction") of the Seller's Rights to Shares with such Auction to be reasonably conducted as reasonably decided by the Seller and in accordance with this Agreement.

      7.    Bidding Procedures. Notwithstanding anything else contained herein to the contrary:

      (a)    The first higher bid for the Seller's Rights to the Shares shall be not less than $29,072.00 which is $500 greater than the Initial Offer Price. Each higher bid thereafter for the Seller's Rights to the Shares at the Auction must be at least $500 greater than the previous bid.

      (b)    Any offer accepted for the Seller's Rights to the Shares must be an offer for all of the Seller's Rights to the Shares and the Seller's Rights to the Shares will not be available for purchase in increments or separate parcels.

      8.    Title. Title to the Seller's Rights to the Shares shall be delivered to Buyer and Buyer agrees to accept such title by a duly executed assignment and bill of sale, from the Seller, and duly executed stock power which shall convey all of Seller's right, title and interest of any kind whatsoever, if any, whether known or unknown, whether legal or equitable in and to the Seller's Rights to the Shares to Buyer free and clear of all liens, adverse claims or interests pursuant to 11 U.S.C. § 363(f).

      9.    Closing. The closing (the "Closing") shall take place on a mutually agreed day and time at the offices of Cohne Kinghorn (or at such other location mutually agreed upon by the parties) within twenty (20) days after entry of the last order of the Bankruptcy Court approving this Agreement. At the Closing, the Buyer shall deliver the Purchase Price by certified funds to the Seller's less the Deposit.

      10.    Representations of Buyer. Except for Seller's representation as to title set forth in Section 8 of this Agreement, Seller makes no other representations or warranties of any kind about an investment in the Shares, about Aviacode, or about whether the Seller is the owner of the Shares, about whether, after Closing, the Shares will or will not be subject to restrictions on further disposition or trading by Buyer. Buyer has access to and is familiar with the business, books and records relating to Aviacode, including Aviacode financial statements and financial position. Buyer acknowledges as follows:

      (a)    Buyer is the Founder and Executive Chairman of Aviacode and is familiar with Aviacode's operations, financial condition, prospects, assets and liabilities, and Buyer relies

solely on his personal knowledge of all material information concerning Aviacode and on investigations made by Buyer or Buyer's representatives in making Buyer's investment decision to purchase the Seller's Rights to the Shares. Buyers actions under this Agreement are as an individual and not in his capacity as Founder and Executive Chairman of Aviacode.

(b)  In Buyer's opinion, Buyer's overall commitment to investments that are not readily marketable is not disproportionate to Buyer's net worth, and in Buyer's opinion, Buyer's investment in the Seller's Rights to the Shares will not cause such overall commitment to such investments to become excessive.

(c)  Buyer is capable of evaluating the merits and risks of purchasing the Seller's Rights to the Shares.

(d)  Buyer understands that there is no trading market for the Seller's Rights to the Shares and that Aviacode is a privately-held company and that there may be no ability for Buyer to liquidate the Shares in the future.

(e)  Buyer, as Founder and Executive Chairman of Aviacode, has received the financial statements of Aviacode and is aware of the financial condition of Aviacode.

(f)  Buyer is able to bear the economic risk of this investment.

(g)  Buyer recognizes that Aviacode is a speculative venture. Buyer recognizes that an investment in Aviacode involves significant risks, and Buyer has taken full cognizance of and understands all of the risk factors related to the purchase of the Seller's Rights to the Shares. Consequently, Buyer confirms that Buyer is financially prepared to hold the Seller's Rights to the Shares for a substantial period of time and to withstand the possibility of a total loss of his investment.

(h)  Buyer has the full power and authority to execute and deliver this Agreement, and Buyer's execution and delivery of this Agreement will not conflict with or result in a breach of any other agreement or obligation.

11.  <u>Taxes and Expenses of Sale</u>. Buyer will be responsible for, and to promptly pay, any taxes (including sales or transfer taxes), transfer fees, or other costs (other than Sellers attorney's fees in connection with this sale) incurred in connection with the sale of the Interest. The Paul Chacon Bankruptcy Estate will bear the costs of preparing, filing and noticing a motion to approve this sale.

12.  <u>Buyer Accepts Shares "As Is."</u>  Except as provided in Section 8 of this Agreement, Buyer acknowledges for itself and its successors and assigns, that Buyer (i) has been given a reasonable opportunity to inspect and investigate the Seller's Rights to the Shares and all aspects relating thereto, either independently or through agents and experts of Buyer's choosing; and (ii) is acquiring the Seller's Rights to the Shares based upon Buyer's own investigation and inspection thereof.

SELLER AND BUYER AGREE THAT THE SELLER'S RIGHTS TO THE SHARES SHALL BE SOLD AND THAT BUYER SHALL ACCEPT POSSESSION OF THE

SHARES ON THE CLOSING DATE "AS IS, WHERE IS, WITH ALL FAULTS" WITH NO RIGHT OF SET-OFF OR REDUCTION IN THE PURCHASE PRICE AND THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, SUCH SALE SHALL BE WITHOUT REPRESENTATION OR WARRANTY OF ANY SELLER OF ANY KIND, EXPRESS OR IMPLIED INCLUDING, WITHOUT LIMITATION, WARRANTY OF INCOME POTENTIAL OPERATING EXPENSES, USES, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. EXCEPT AS PROVIDED IN SECTION 8 OF THIS AGREEMENT, THE SELLER DOES HEREBY DISCLAIM AND RENOUNCE ANY SUCH REPRESENTATION OR WARRANTY. BUYER SPECIFICALLY ACKNOWLEDGES THAT BUYER IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE SELLER OR ANY AGENTS OR BROKERS AS TO ANY MATTER CONCERNING THE SELLERS' RIGHTS TO THE SHARES.

13.    Performance.  If Buyer is unable or fails to perform any of his obligations under this Agreement for any reason, Seller shall be entitled to terminate this Agreement and retain the Deposit as liquidated damages. Buyer acknowledges that Seller's damages would be difficult to determine and that such sum is a reasonable estimate of Seller's damages. Buyer and Seller further agree that this Section 13 is intended to, and does, liquidate the amount of damages due Seller, and shall be the exclusive remedy of Seller against Buyer, both at law and in equity, arising from or related to a breach by Buyer of its obligation to consummate the transaction contemplated by this Agreement.

14.    Successors and Assigns.  This Agreement shall bind Buyer and Seller and anyone succeeding to their interests in this Agreement, including any successor trustee to each of the Seller. Buyer shall have the right, by written notice to Seller, not less than five (5) business days prior to Closing, to designate another entity to take title to the Property. No such designation shall be valid unless and until Buyer has delivered to Seller an agreement whereby such designee shall assume the performance of and agree to be bound by all of the terms, covenants and conditions of this Agreement. Notwithstanding such designation, the original named Buyer hereunder shall remain liable for all of the obligations of Buyer under this Agreement. Nothing in this Section 14 shall be deemed to entitle Buyer to any extension of time under any provision of this Agreement.

15.    Amendment.  This Agreement represents the parties' entire agreement. It supersedes all prior statements, negotiations and agreements, whether written or oral. This Agreement may not be amended, altered or modified except by a written instrument executed by the party to be bound.

16.    Retention of Jurisdiction.  The Bankruptcy Court shall retain, to the extent permitted by law, the exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof, including, without limitation any dispute with the parties hereto or disputes with any person or entity not a party to this Agreement.

17.    Additional Documentation and Assistance.  If at any time prior to Closing or after the Closing any further reasonable action is necessary or desirable to carry out the purposes

of this Agreement, each party hereto shall take or cause to be taken all such necessary or desirable action and execute, deliver and file, or cause to be executed, delivered and filed, all reasonable necessary or desirable documentation.

18. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, including electronically transmitted counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute but one and the same Agreement.

*(This space is intentionally left blank. The next page is the signature page.)*

## SIGNATURE PAGE
### OFFER TO PURCHASE AND PURCHASE AGREEMENT

IN WITNESS WHEREOF, the parties have duly executed and delivered this Offer to Purchase and Purchase Agreement.

Dated: 3/23/, 2015

Seller:

_____
David L. Miller, Chapter 7 Trustee for the Bankruptcy Estate of Paul Chacon

Dated: March 20, 2015, 2015

Buyer:

_____
David Jensen
515 East 100 South, Suite 700
Salt Lake City, UT 84102

f:\aoh\net docs\offer to purchase chacon.docx